**COOPER NOTIFICATION, INC., Plaintiff,**

v.

**TWITTER, INC., Everbridge Inc., Rave Wireless Inc., and Federal Signal Corp., Defendants.**

Civil Action No. 09–865–LPS.

United States District Court, D. Delaware.

May 25, 2012.

Order Denying Reconsideration July 16, 2012.

Philip A. Rovner and Jonathan A. Choa, Potter Anderson & Corroon LLP, Wilmington, DE, Paul J. Andre, Lisa Kobialka, Sean Boyle, and James R. Hannah, Kramer Levin Naftalis & Frankel LLP, Menlo Park, CA, for Plaintiff.

John G. Day and Lauren E. Maguire, Ashby & Geddes, Wilmington, DE, Lynn H. Pasahow, J. David Hadden, Ryan J. Marton, Mashhood Rassam, and Phillip J. Haack, Fenwick & West LLP, Mountain View, CA, for Defendant Twitter, Inc.

Adam W. Poff and James L. Higgins, Young Conaway Stargatt & Taylor LLP, Wilmington, DE, Daniel W. McDonald and Thomas J. Leach, Merchant & Gould P.C., Minneapolis, MN, for Defendant Federal Signal Corp.

Frederick L. Cottrell, III, Richards Layton & Finger, P.A., Wilmington, DE, Edward Cavazos, Joshua L. Tucker, and Conor M. Civins, Bracewell & Giuliani LLP, Austin, TX, for Defendant Everbridge Inc.

### MEMORANDUM OPINION

UNSEALED ON MAY 31, 2012

STARK, District Judge:

## I. INTRODUCTION

Presently before the Court are numerous summary judgment and *Daubert* motions filed by Plaintiff Cooper Notification, Inc. ("Cooper") and Defendants Twitter, Inc. ("Twitter"), Everbridge Inc. ("Everbridge"), and Federal Signal Corp. ("Federal Signal") (collectively, "Defendants"). The Court heard oral argument on the parties' motions on April 9, 2012. (*See* Motions Hr'g Tr., Apr. 9, 2012) (D.I. 555) (hereinafter "Tr.") The Court has concluded that there is no genuine dispute that Defendants' accused systems do not "transmit at least one gateway message to a plurality of the user terminals via the one or more communication gateways," as required by the asserted claims. Accordingly, and for reasons further explained below, the Court will grant Defendants' motions for summary judgment of non-infringement. (D.I. 386; D.I. 399; D.I. 412)

## II. BACKGROUND

### A. The '428 patent

United States Patent No. 7,409,428 ("the '428 patent") is entitled "Systems and Methods for Messaging to Multiple Gateways," and issued on August 5, 2008 to assignee Cooper Technologies Company. The '428 patent is directed generally to providing systems and methods for communication among multiple communication gateways for delivery to intended recipients with increased speed and reliability. (*See* '428 patent, col. 2 ll. 55–60) The '428 patent contains a total of eighteen claims. Claims 1 and 12 are the only independent claims. While claims 1 through 11 are method claims, claims 12 through 18 are system claims.

### B. *Inter Partes* Reexamination of the '428 Patent

Cooper filed suit against Defendants on November 13, 2009. (D.I. 1) On August 26, 2010, the Defendants filed a request for *inter partes* reexamination of the '428 pat-

ent, seeking to invalidate all eighteen claims in view of four prior art references.[1] Defendants' request proposed seven separate grounds for rejection, including an assertion that numerous claims of the '428 patent were anticipated under 35 U.S.C. § 102(e) by United States Patent No. 6,816,878 ("Zimmers"). On November 19, 2010, the Examiner issued an Office Action initially rejecting Claims 1–18 of the '428 patent. (D.I. 451, Ex. 9 at 3) Cooper and Defendants filed responses to the Office Action on January 19, 2011 and February 16, 2011, respectively.

On October 6, 2011, the Patent Office issued an Action Closing Prosecution in the *inter partes* reexamination proceedings. (*Id.*, Ex. 8) The Examiner again rejected various claims, including Claim 1, as anticipated by Zimmers. (*Id.*, Ex. 8 at 13, 17) Notably, however, the Examiner withdrew the rejections for several other claims, including Claim 12, which previously had been rejected as anticipated by Zimmers. (*Id.*, Ex. 8 at 18) The Examiner explained that those rejections had been withdrawn in view of material differences that rendered Claim 12 patentably distinct from both Claim 1 and Zimmers:

> Further, [Claim 12] requires that the first messaging subsystem "... is configured to transmit at least one gateway message to a plurality of user terminals via the one or more communication gateways, in accordance with each set of the unique message parameters for each communication gateway ..." which is not taught or suggested by Zimmers. Zimmers discloses that a gateway message (Table III packet) is transmitted to

a gateway where an alert message is then created and transmitted to the user. The user does not receive a gateway message as is claimed.

> In his Request, Requestor points to his analysis of claim 1 for the above limitations, yet such limitations are different than those in claim 1; the system of claim 1 creates a second message to send to the end users (as in Zimmers), rather than transmitting the gateway message to the user....

(*Id.*, Ex. 8 at 21)[2]

## C. The *Markman* Hearing and Withdrawal of Claims 1–11

On September 9, 2011, the Court held a *Markman* hearing. (D.I. 270) Subsequently, by letter dated November 30, 2011, Cooper notified the Court that it was no longer asserting Claims 1–11 of the '428 patent. (D.I. 331)[3] On February 17, 2012, 2012 WL 528137, the Court issued an opinion and order construing the disputed terms of the '428 patent. (D.I. 455)

The parties filed numerous summary judgment and *Daubert* motions on January 24, 2012. (D.I. 382; D.I. 384; D.I. 386; D.I. 389; D.I. 391; D.I. 393; D.I. 396; D.I. 399; D.I. 401; D.I. 402; D.I. 405; D.I. 407; D.I. 412) Briefing on those motions was completed on March 23, 2012, and the Court held a hearing on April 9, 2012.

## III. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

1. On September 10, 2010, Defendants jointly moved to stay the present litigation pending the outcome of the *inter partes* reexamination proceedings. (D.I. 41) The Court denied Defendants' request on December 13, 2010, 2010 WL 5149351. (D.I. 81)

2. In April 2012, Cooper and Defendants each filed Notices of Appeal in the reexamination proceedings. (D.I. 557, Exs. J & K)

3. Subsequently, on February 28, 2012, the Court granted Defendants' motion to dismiss Claims 1–11 from the present litigation. (D.I. 501)

matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir.2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## IV. DISCUSSION

### A. The Parties' Dispute Concerning the "Gateway Message" Transmission Limitation of the Asserted Claims

Although individually seeking summary judgment on various grounds, all Defendants assert that their accused systems do not *"transmit at least one gateway message to a plurality of the user terminals via the one or more communication gateways"* as recited in Claim 12, which is reproduced below (emphasis added):

12. A communication system comprising:

a first messaging subsystem which may be coupled to an alert originator and to one or more communication gateways, wherein each of the gate-

ways is also coupled to at least one user terminal, and wherein the first messaging subsystem associates a unique set of message parameters with each of the communication gateways;

wherein the first messaging subsystem is configured to *transmit at least one gateway message to a plurality of the user terminals via the one or more communication gateways,* in accordance with each set of the unique message parameters for each communication gateway, upon receiving a first message from the alert originator;

wherein the first messaging subsystem is configured to reformat, for each of the one or more gateway messages, the first message received from the alert originator to a format in which the communication gateway associated with the gateway message will accept and perform operations in response to the incoming gateway message; and

wherein the first messaging subsystem is configured to form an address for each of the one or more gateway messages to include the domain name information associated with the communication gateway or the user identification information associated with the registered user receiving the second message.

According to Defendants, Claim 12 requires an accused system to "transmit" a gateway message so that the gateway message *itself* actually reaches the user terminals. Defendants, thus, seek summary judgment of non-infringement because, in their view, it is undisputed that the alleged "gateway messages" identified by Cooper do not directly reach the user terminals of the accused systems; instead, only the "second message" is received by the user terminals. (*See, e.g.,* D.I. 486 at 1, 4; D.I. 387 at 7–8; D.I. 413 at 7–10)

Cooper responds that "*transmitting* the gateway message to the user terminal, as Claim 12 requires, is not the same as the gateway message being *received* by the user terminal." (D.I. 444 at 12) (emphasis added) According to Cooper, Claim 12 only requires that "a gateway message be transmitted and a second message be received." (*Id.*) Cooper, thus, maintains that Defendants infringe Claim 12 because the alleged gateway message in each accused system is "transmitted" to the communication gateways, and ultimately is "received" by the user terminals "as a second message." (D.I. 444 at 6; D.I. 441 at 2; D.I. 448 at 3–4)

As a preliminary matter, the Court agrees with Defendants that the parties' competing positions present a claim construction dispute as to the proper meaning of the gateway message transmission requirements of Claim 12, rather than an infringement dispute over the nature or operation of the Defendants' accused systems. Cooper does not appear to dispute Defendants' assertion that the alleged gateway messages are not themselves actually delivered to the user terminals of the accused systems. Rather, Cooper disputes whether Claim 12 imposes such a requirement. "Because there is no dispute regarding the operation of the accused systems, that issue reduces to a question of claim interpretation and is amenable to summary judgment." *MyMail, Ltd. v. America Online, Inc.,* 476 F.3d 1372, 1378 (Fed.Cir.2007).

■ Cooper's own arguments implicitly acknowledge that the parties' dispute is based on competing claim constructions rather than a disagreement over the configuration of the accused systems. (*See* D.I. 441 at 8 ("Federal Signal's argument is premised on its renewed and still incorrect claim construction position."); Tr. at 63 ("So the mere fact they're trying to

revisit claim construction is apparent here.")) To the extent Cooper suggests summary judgment must be denied because the Court should not consider claim construction issues after the completion of the scheduled claim construction process (Tr. at 63, 65), the Court disagrees.[4] Although raised for the first time in the summary judgment context, the parties' disagreement concerning the gateway message transmission requirements of Claim 12 highlights a fundamental dispute over claim meaning, which the Court, rather than a jury, must resolve.[5]

**B. The Court's Construction of "transmit at least one gateway message to a plurality of the user terminals via the one or more communication gateways"**

■ The Court now turns to determining the proper construction of the disputed claim language according to the principles articulated in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed.Cir.2005) (*en banc*). Although the parties appear to agree that Claims 1 and 12 differ in scope, they disagree as to the precise nature of those differences.

Defendants contend that Claim 12 materially differs from Claim 1 (and Zimmers) with respect to the **destinations** of the **gateway messages.** According to Defendants, Claim 1 only requires a gateway message that is "transferred" to the communication gateways for the subsequent delivery of the second message to the user terminals, whereas Claim 12 requires that the gateway message itself be transmitted so that it reaches the user terminals.

Cooper maintains that Claims 1 and 12 differ with respect to the **content** of the **second message.** According to Cooper, the gateway messages of Claims 1 and 12 share the same destination; they are sent to the communication gateways for processing, and—in both claims—it is only the second message that is actually delivered to the user terminals. Cooper contends the real difference between Claim 1 (and Zimmers) versus Claim 12 is that Claim 1 and Zimmers both provide for the creation and delivery of a second message that is "completely different" from the gateway message, whereas Claim 12 only describes the delivery of a "reformatted" version. (*See* Tr. at 97 ("[C]laim 1 only requires a gateway message to come in and a completely different message can be sent out.... [I]n Zimmers, the examiner says that [a] gateway message comes in. A second message that is completely different from the gateway message can be delivered to the user terminal."); D.I. 444 at 14 ("[T]he Examiner distinguished the Zimmers reference from the '428 Patent because Zimmers teaches the creation of **brand new messages** that are sent to user devices, rather than a reformatted version of the first message."))

---

**4.** The Federal Circuit has noted district courts' discretion in this regard. *See, e.g., Conoco, Inc. v. Energy & Envt'l Int'l, LC,* 460 F.3d 1349, 1359 (Fed.Cir.2006) ("[A] district court may engage in claim construction during various phases of litigation, not just in a *Markman* order."); *Jack Guttman, Inc. v. Kopykake Enters., Inc.,* 302 F.3d 1352, 1361 (Fed.Cir.2002) ("District courts may engage in rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.").

**5.** *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351, 1360 (Fed.Cir.2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute."); *CytoLogix Corp. v. Ventana Medical Sys., Inc.,* 424 F.3d 1168, 1172 (Fed.Cir. 2005) ("[T]he parties ... presented expert witnesses who testified before the jury regarding claim construction, and counsel argued conflicting claim constructions to the jury. This was improper, and the district court should have refused to allow such testimony.").

The Court concludes that Defendants' interpretation is better supported by the intrinsic record. Therefore, the Court will construe "transmit at least one gateway message to a plurality of the user terminals via the one or more communication gateways" to require transmission such that the gateway message itself is delivered to the user terminals.

The Court agrees with Defendants that Claims 1 and 12 recite gateway messages that are sent "to" different destinations. Claim 12 recites a system that is "configured to transmit at least one gateway message *to a plurality of the user terminals.*" ('428 patent, col. 30, ll. 31–33) (emphasis added) Claim 1, by contrast, recites a method that requires only "transferring each of the one or more gateway messages *to one or more corresponding communication gateways.*" (*Id.*, col. 29, ll. 29–34) (emphasis added) There is a "heavy presumption" that claim terms "mean what they say," *Riverwood Int'l Corp. v. R.A. Jones & Co., Inc.*, 324 F.3d 1346, 1357 (Fed.Cir.2003), and a difference in meaning and scope is likewise presumed when different words or phrases are used in separate claims, *see Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed.Cir.1998).[6] Here, both presumptions support Defendants' proposed construction, as Claims 1 and 12 recite different destinations for the gateway messages. Claim 12 requires a system that "transmits" the gateway message "to" the user terminals, while Claim 1 requires that the gateway message be "transferred" "to" the communication gateway for the subsequent "distribution" of the second message to the user terminals.

The reexamination prosecution history reinforces the Court's conclusion that the gateway messages of Claims 1 and 12 are delivered to different destinations. In the Action Closing Prosecution, the Examiner rejected Claim 1 as anticipated by Zimmers, while at the same time withdrawing that rejection with respect to Claim 12, based in part on the conclusion that the gateway message of Claim 1 (and Zimmers) is delivered to a different destination than the gateway message of Claim 12. Specifically, the Examiner noted that while Claim 1 and Zimmers involve the delivery of a *second message* to end users, Claim 12 was patentably distinct because it required the actual delivery of the *gateway message itself* to the user terminals. (*See* D.I. 451, Ex. 8 at 21 ("The user [in Zimmers] does not receive a gateway message as is claimed [in Claim 12].... [C]laim 1 creates a second message to send to the end users (as in Zimmers), rather than transmitting the gateway message to the user.")) As a person skilled in the art, the Examiner's evaluation of the claims and prior art can provide persuasive intrinsic evidence from the reexamination proceedings that supports the Court's construction. *See St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*, 412 Fed.Appx. 270, 276 (Fed.Cir.2011) ("Because an examiner in reexamination can be considered one of ordinary skill in the art, his construction of the asserted claims carries significant weight."); *see also American Hoist & Derrick Co. v. Sowa & Sons,*

---

**6.** Although Claims 1 and 12 are both independent claims, and claim differentiation is "at its strongest" when used to distinguish an independent claim from its dependent claim(s), "there is still a presumption that two independent claims have different scope when different words or phrases are used in those claims." *Seachange Int'l, Inc. v. C–COR, Inc.*, 413 F.3d 1361, 1368–69 (Fed.Cir.2005); *see also Curtiss–Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed.Cir.2006) ("Beyond the independent/dependent claim scenario, this court has characterized claim differentiation more generally, i.e., as the presumption that each claim in a patent has different scope.") (internal quotation marks omitted).

*Inc.,* 725 F.2d 1350, 1359 (Fed.Cir.1984) (noting that patent examiners are presumed to "have some expertise in interpreting the [prior art] references and to be familiar from their work with the level of skill in the art").

By contrast, Cooper's proposed reading of Claim 12 conflicts with both the claims and the reexamination prosecution history. Cooper's suggestion that Claims 1 and 12 differ in the content of their second messages rather than the destination of the gateway messages is directly contradicted by the claim language, which uses *different* words to describe the *destinations* of the gateway messages, yet employs *identical* language to describe the *content* of the second messages. Specifically, Claims 1 and 12 both indicate that the second messages result from "reformatting" the first message to a format in which the communication gateways will "accept and perform operations" on the incoming gateway messages. (*Compare* '428 patent, col. 29, ll. 36–43 *with* '428 patent, col. 30, ll. 38–43) There is nothing in the claim language to support Cooper's view that Claims 1 and 12, respectively, draw a distinction between second messages that are "completely different" and second messages that are merely "reformatted." Nor is the Court persuaded by Cooper's argument that the Examiner allowed Claim 12 during reexamination based on such a distinction. To the contrary, the Examiner's statements in the Action Closing Prosecution were directed to the different destinations for the gateway messages in Claim 12 versus Claim 1 and Zimmers, not to the content of the second message.

The Court has considered Cooper's argument that the gateway message in Claim 12 is "transmitted" only to the communication gateway, and is ultimately received by the user terminals "as a second message." Claims 1 and 12 both recite that the user terminals "receiv[e]" the second message;[7] and Claim 12 does not explicitly state that the user terminals also "receive" the gateway message. However, it logically follows that if the system of Claim 12 "transmits" the gateway message itself "to" the user terminals, the user terminals must also "receive" the transmitted gateway message, even if this is not explicitly recited in the claim. *See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.,* 442 F.3d 1322, 1325 (Fed.Cir.2006) ("Although 'gap' does not appear in claim 18, the claim term 'a tight interference fit' implies some sort of space between the frame and the insert.").[8]

Although Cooper is correct that the '428 patent discloses embodiments correspond-

---

7. Claim 1 refers initially to "a second message" and then later (twice) to "the second message." Claim 12, by contrast, contains but a single reference to "the second message," arguably with no antecedent basis. Defendants have moved for summary judgment of invalidity of the asserted claims of the '428 patent based on indefiniteness. (D.I. 384) Given the Court's ruling as to non-infringement, the Court is not reaching issues of invalidity.

8. Cooper also argues that the "via the one or more communication gateways" language of Claim 12 signifies that the gateway message itself does not physically pass *through* the gateway en route to the user terminals, as Defendants argue, but instead is transmitted

*by* the communication gateway, which accepts and performs operations on the gateway message before relaying the second message(s) to the user terminals. (Tr. at 70–71) However, both the language and scope of Claim 11—which depends on claim 1—seem to refute Cooper's position. *See Phillips,* 415 F.3d at 1314. *First,* the language of Claim 11 simultaneously recites "by the one or more communication gateways" (from claim 1) as well as "via the communication gateway," suggesting that relaying messages "by" and "via" the communication gateways are two different things. *See Applied Med. Res. Corp. v. U.S. Surgical Corp.,* 448 F.3d 1324, 1333 n. 3 (Fed.Cir.2006) (noting that "the use of two terms in a claim requires that they connote different *meanings* "). *Second,* the scope of

ing to the messaging architecture reflected in Cooper's proposed construction, in the Court's view these embodiments are covered by Claims 1–11, and not by Claim 12 or it dependent claims. *See Helmsderfer v. Bobrick Washroom Equip., Inc.,* 527 F.3d 1379, 1383 (Fed.Cir.2008) ("It is often the case that different claims are directed to and cover different disclosed embodiments."); *Intamin Ltd. v. Magnetar Techs., Corp.,* 483 F.3d 1328, 1337 (Fed. Cir.2007) ("[A] claim need not cover all embodiments.... A patentee may draft different claims to cover different embodiments."). Nor is the Court persuaded by Cooper's suggestion that interpreting Claim 12 to require actual delivery of the gateway message itself to the user terminals would be illogical or nonsensical. (D.I. 521 at 2; D.I. 523 at 2; D.I. 526 at 2) Even assuming that Cooper is correct, courts "do not redraft claims to contradict their plain language in order to avoid a nonsensical result." *Haemonetics Corp. v. Baxter Healthcare Corp.,* 607 F.3d 776, 782 (Fed.Cir.2010); *Chef America, Inc. v. Lamb–Weston, Inc.,* 358 F.3d 1371, 1374 (Fed.Cir.2004) ("[W]e construe the claim as written, not as the patentees wish they had written it.") If Cooper intended Claims 1 and 12 to share the same gateway message transmission requirements, it could and should have used the same language to describe that process in both claims. *See Hoganas AB v. Dresser Indus., Inc.,* 9 F.3d 948, 951 (Fed.Cir.1993) ("If Hoganas, who was responsible for drafting and prosecuting the patent, intended something different, it could have prevented this result through clearer drafting.... It would not be appropriate for us now to interpret the claim differently just to cure a drafting error.").

Finally, the Court disagrees with Cooper's repeated suggestions that Defendants' construction of Claim 12 is foreclosed by or otherwise inconsistent with the Court's earlier claim construction opinion. The Court previously addressed the proper construction of claim limitations that (with one exception) were commonly recited in both Claims 1 and 12. Here, by contrast, the Court must resolve a different issue—the distinction between Claims 1 and 12 with respect to the transmission and destination of the recited gateway messages—based on different claim language, as well as additional prosecution history that was not previously presented to the Court (because it arose during the reexamination proceedings, after the *Markman* hearing).[9]

Claim 11 further suggests that messages relayed "via" the communication gateways do physically pass through the gateway en route to their intended destinations. Claim 11 is directed to the tracking of replies received from user terminals to confirm receipt of the second message. The reply-tracking embodiments disclosed in the '428 patent indicate that this functionality is performed by the messaging subsystem 101 or a component thereof, and not by the communication gateways. (*See* '428 patent at col. 7, ll. 23–34; col. 11, ll. 58–64; col. 13, ll. 21–34; col. 19, ll. 15–17; col. 26, ll. 27–31; col. 27, ll. 36–39) Because the messaging subsystem is situated *upstream* of the communication gateway, Claim 11 strongly suggests that replies received "via the communication gateway" physically pass through the gateway to reach their intended destination, the messaging subsystem. It follows that Claim 12 imposes a similar requirement for the gateway messages that are transmitted "via the one or more communication gateways" to their intended destination—the user terminals—consistent with Defendants' proposed construction. Cooper's proposed reading of "via the one or more communication gateways" to mean performance "by" the communication gateways, by contrast, would appear improperly to exclude the reply-tracking embodiments from the scope of Claim 11. *See In re Katz Interactive Call Processing Litig.,* 639 F.3d 1303, 1324 (Fed.Cir.2011).

9. Cooper also misinterprets the significance of various statements in the Court's claim

In sum, the Court adopts Defendants' construction of the gateway message transmission limitation of Claim 12, as it is extensively supported by the intrinsic record of the '428 patent.[10]

### C. Summary Judgment of No Literal Infringement

■ Under the Court's construction of the gateway message transmission limitation, Defendants are entitled to summary judgment of non-infringement. There is no genuine dispute that Defendants' accused systems do not actually deliver the gateway message itself to the user terminals; instead, only the second message reaches the user terminals.

Specifically, the accused gateway messages identified by Cooper—the Twitter "Tweet," the Everbridge "campaign," and the Federal Signal "SmartMsg"—each contain substantive message content bundled together with the user information for *multiple* end users. (D.I. 441 at 5; D.I. 444 at 5; D.I. 448 at 4) The accused second messages, in turn, contain only the substantive message content and the user information for the *single* end user actually receiving that particular second message. (D.I. 441 at 5; D.I. 444 at 5; D.I. 448 at 4) Thus, there is no genuine dispute that only the second message is actually delivered to the user terminals in Defendants' accused systems; the gateway message itself—identifying multiple end users—is not delivered to the user terminals.[11] Indeed, in opposing summary judgment, Cooper repeatedly and consistently argued that the gateway message reached the user terminals "as a second message," based in part on its view that it would be "entirely illogical" and "does not make sense to read Claim 12 as requiring delivery to every user terminal of unnecessary address information for messages intended for other user terminals." (D.I. 521 at 2; D.I. 523 at 2; D.I. 526 at 2)

Because there is no genuine dispute that Defendants' accused systems do not satisfy the "gateway message transmission" limitation of Claim 12 under the Court's construction, Defendants are entitled to sum-

---

construction opinion. First, Cooper argues that the gateway message can only travel to the communication gateway, based on the Court's statement that "[t]he claims and specification make clear that the communication gateway receives an incoming gateway message and then distributes the second message to the user terminals." (D.I. 523 at 2–3) However, nothing in the Court's statement forecloses the delivery of the gateway message itself to the user terminals. Second, Cooper suggests that the Court's reading of the prosecution history reflects the Court's understanding that Zimmers differs from the claimed invention because it does not teach a gateway message at all; not because it requires delivery of the gateway message to user terminals. (D.I. 523 at 2–3, citing D.I. 455 at 7 n. 2) However, the Court simply concluded that the *patentee* had not disclaimed subject matter when distinguishing Zimmers during reexamination, which is a separate matter from why the *Examiner* found Claim 12 patentably distinct from Claim 1 and Zimmers.

10. The Court does not attribute significant weight to Dr. Vigna's expert declaration offered in support of Cooper's proposed construction. (D.I. 522; D.I. 524; D.I. 527) In the Court's view, Dr. Vigna's testimony is at odds not only with the intrinsic record; it also fails to identify specifically any supporting evidence that the disputed claim language has an accepted meaning in the field. *See generally Phillips*, 415 F.3d at 1318.

11. Although Cooper suggests that Dr. Vigna's testimony raises a factual dispute over whether the gateway message reaches the user terminals (D.I. 557 at 2–3), that testimony relies on Cooper's flawed construction of Claim 12. Dr. Vigna's testimony does not address whether the accused gateway messages reach the user terminals under the Court's construction, which requires the actual delivery of the *entire* gateway message itself to the user terminals.

mary judgment of no literal infringement with respect to Claim 12 and each of its dependent claims. *See Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 n. 5 (Fed.Cir.2008) ("A conclusion of noninfringement as to the independent claims requires a conclusion of noninfringement as to the dependent claims.").

### D. Summary Judgment of No Infringement Under the Doctrine of Equivalents

 The Court further concludes that Defendants are entitled to summary judgment of non-infringement under the doctrine of equivalents, because Cooper has failed to provide particularized testimony and linking argument sufficient to support its doctrine of equivalents theory. A patentee must "provide particularized testimony and linking argument . . . to support a finding of infringement under the doctrine of equivalents. Such evidence must be presented on a limitation-by-limitation basis." *Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed.Cir.1996). "The same rule applies in the summary judgment context," and "generalized testimony as to the overall similarity between the claims and the accused infringer's product . . . does not suffice to create a genuine issue of material fact." *Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, 651 F.3d 1318, 1339 (Fed. Cir.2011).

Here, Cooper was required to provide particularized testimony and linking argument demonstrating the equivalence between Defendants' accused systems, which deliver only the second message(s) to user terminals, and the gateway message transmission limitation of Claim 12, which under the Court's construction requires the actual delivery of the gateway message itself to the user terminals. Following the summary judgment hearing, the Court ordered the parties to identify, *inter alia,* where in the record the Court could find particular-

ized testimony and linking argument to support Cooper's infringement allegations under the doctrine of equivalents. (D.I. 556) Having reviewed the parties' supplemental letter submissions on this issue, the Court agrees with Defendants that Cooper's expert testimony is insufficient to withstand summary judgment.

The Court agrees with Defendants that the expert testimony identified by Cooper largely consists of "conclusory boilerplate" language that merely recites the legal elements of the "function-way-result" test for equivalence, together with various claim limitations and elements of Defendants' accused systems. There is no meaningful explanation of why or how Defendants' accused systems are equivalent to the asserted claims with respect to the gateway message transmission requirement of Claim 12.

Additionally, the Court finds Dr. Vigna's expert testimony deficient because it fails to address the relevant equivalence inquiry raised by Defendants' summary judgment motions. In the Court's view, Dr. Vigna's testimony merely explains how or why the ***accused gateway messages*** in Defendants' accused systems are equivalent to the ***recited gateway messages*** of Claim 12. However, that testimony is not responsive to Defendants' non-infringement position based on the ***transmission requirements*** of Claim 12—namely, whether delivering only the ***second message*** to user terminals in Defendants' accused systems is equivalent to the transmission of the ***gateway message*** itself to the user terminals as recited in Claim 12. On this point, Cooper has not adequately identified or provided the particularized testimony and linking argument necessary to survive summary judgment.

Moreover, as already noted, Cooper repeatedly and consistently has argued that delivery of the gateway message itself to

the user terminals would be "entirely illogical" and nonsensical. Thus, in the Court's view, permitting Cooper to proceed with infringement allegations under the doctrine of equivalents risks vitiating the gateway message transmission limitation of Claim 12. *See Carnegie Mellon Univ. v. Hoffmann—La Roche Inc.*, 541 F.3d 1115, 1129 (Fed.Cir.2008) ("In determining whether a finding of infringement under the doctrine of equivalents would vitiate a claim limitation, we must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless.") (internal quotation marks omitted).

Because Cooper failed to provide sufficiently particularized testimony and linking argument in support of its infringement allegations under the doctrine of equivalents in connection with the gateway message transmission limitation of Claim 12, and because crediting any such testimony might improperly vitiate that claim limitation, the Court will grant summary judgment of non-infringement under the doctrine of equivalents with respect to Claim 12 and each of its dependent claims. *See Muniauction*, 532 F.3d at 1329 n. 5.[12]

### E. Consistency and Timeliness

The Court has further considered whether matters of consistency and/or timeliness might fairly preclude summary judgment. For the reasons explained below, the Court concludes that neither consideration warrants denial of summary judgment.

#### 1. Consistency

■ To the extent Cooper suggests that Defendants should be estopped from seeking summary judgment based on Defendants' previously proposed construction of the gateway message transmission limitation of Claim 12, the Court disagrees. Cooper appears to contend that because Defendants argued during the claim construction proceedings that Claims 1 and 12 shared the same gateway message transmission requirements, Defendants should not now be permitted to seek summary judgment based on a different claim construction position—especially a position that now draws a critical distinction between the gateway message transmission requirements of Claims 1 and 12. (*See, e.g.*, D.I. 561 at 5–6, 9)

■ Judicial estoppel is appropriate only where (1) the party to be estopped is asserting a position that is *irreconcilably inconsistent* with one he or she previously asserted; (2) the party changed his or her

---

**12.** Although Federal Signal and Everbridge originally argued in their briefing that infringement under the doctrine of equivalents was barred by the disclosure-dedication doctrine, rather than the lack of particularized testimony and linking argument, Federal Signal did raise the lack of particularized testimony during the hearing. (Tr. at 47–48) "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(f). Here, the Court's order requesting two rounds of supplemental letter briefing provid-

ed all parties with sufficient notice and a meaningful opportunity to address whether Cooper had adequately provided particularized testimony and linking argument for the gateway message transmission limitation. Further, although Twitter did not itself seek summary judgment regarding the doctrine of equivalents, the Court has discretion to grant such relief to Twitter *sua sponte*, particularly given that the same reasoning applies to Twitter that has also been applied to its co-defendants. *See Couden v. Duffy*, 446 F.3d 483, 500 (3d Cir.2006) (affirming summary judgment in favor of non-moving defendant where its co-defendants had filed motions for summary judgment on same issue).

position in **bad faith,** i.e., with an intent to play fast and loose with the court, and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity and no lesser sanction would adequately remedy the situation. *See Montrose Med. Group Participating Savings Plan v. Bulger,* 243 F.3d 773, 779–780 (3d Cir.2001).

The Court finds that Defendants' current non-infringement position is substantially justified in view of the procedural history of this case, which includes concurrent reexamination and district court proceedings. At the time of the parties' *Markman* hearing, Defendants had successfully persuaded the reexamination Examiner to initially reject all claims of the '428 patent. It was only subsequent to the *Markman* hearing that the Examiner, in the Action Closing Prosecution, interpreted Claim 12 as requiring the actual delivery of the gateway message itself to the user terminals, and on that basis withdrew the previous rejection of Claim 12 in view of Zimmers. Shortly thereafter, Cooper also voluntarily withdrew Claims 1–11 from the case.

In the Court's view, the Examiner's interpretation of the gateway message transmission limitation, coupled with Cooper's subsequent withdrawal of Claims 1–11, placed this case in a dramatically different posture from that which existed at the time of the *Markman* hearing. Given

these materially changed circumstances, it was neither irreconcilably inconsistent nor bad faith for Defendants to seek summary judgment based on the Examiner's interpretation of the gateway message transmission limitation.[13]

To the extent Cooper does not seek to bar Defendants' non-infringement position as a matter of judicial estoppel, but otherwise seeks to highlight the purported discrepancies between Defendants' previous and current claim construction positions as support for Cooper's interpretation of Claim 12, the Court is not persuaded. As already explained, the intrinsic record as it now exists supports Defendants' construction of the gateway message transmission limitation, irrespective of what Defendants may have argued previously during the earlier claim construction process.

### 2. Timeliness

■ The Court also has carefully considered whether Defendants disclosed their noninfringement theory to Cooper in a sufficiently timely manner to provide Cooper a fair opportunity to offer particularized testimony and linking argument with respect to the gateway message transmission limitation of Claim 12.

In the Court's view, Defendants' first meaningful disclosure of their gateway message transmission non-infringement theory did not occur until service of their rebuttal expert reports on December 8, 2011. (D.I. 332; D.I. 333; D.I. 334)[14]

13. The propriety of Defendants revising their position on construction of the gateway message transmission requirements of Claims 1 and 12 is not undermined by their earlier unsuccessful efforts to stay the instant litigation pending completion of the reexamination proceeding. Relatedly, Cooper successfully opposed Defendants' motion to stay, preferring to proceed with concurrent reexamination and litigation with full knowledge that subsequent developments before the Patent Office could prompt the Court to revisit claim construction issues during litigation.

14. Defendants contend that they clearly and meaningfully disclosed their gateway message transmission non-infringement theory prior to serving their expert reports through various means, including statements by counsel during the *Markman* hearing, statements by witnesses in depositions during fact discovery, and supplemental interrogatory responses by Twitter. (D.I. 558; D.I. 560) The Court does not agree that these informal and insufficiently detailed disclosures placed Cooper on fair notice of Defendants' gateway message transmission non-infringement theory.

Thus, Cooper did not have meaningful notice of Defendants' gateway message transmission non-infringement theory at the time of Dr. Vigna's opening expert reports on the issue of infringement. The Court concludes, nonetheless, that Cooper's failure to provide particularized testimony and linking argument in response to Defendants' non-infringement theory did not result from the manner or timing of Defendants' disclosure. Instead, Cooper's failing was the consequence of Cooper's own actions, or lack thereof.

Defendants correctly note that Cooper refused to provide detailed infringement contentions *before* serving its opening expert report on November 11, 2011. (D.I. 137) Defendants could not have disclosed their gateway message transmission non-infringement position until after Cooper had meaningfully identified, in its opening expert report, the accused gateway messages in each of Defendants' accused systems.

More importantly, Cooper's silence and inaction *after* receiving Defendants' rebuttal expert reports undermine any claims by Cooper of prejudice. Cooper was on notice of Defendants' non-infringement position as of December 8, 2011, when Cooper received Defendants' rebuttal expert reports. Several weeks later, on January 24, 2012, Defendants moved for summary judgment of non-infringement based, in part, on their gateway message transmission non-infringement theory. Briefing on Defendants' summary judgment motions was completed on March 23, 2012, shortly before the parties' hearing on April 9, 2012. Throughout this time, Cooper never attempted to strike the portions of Defendants' non-infringement expert reports relating to the gateway message transmission theory; nor did Cooper attempt to supplement its own expert reports to respond to that theory, or otherwise seek any relief from the Court.[15] If Cooper genuinely believed it had been unfairly prejudiced or disadvantaged by the timing or manner of Defendants' disclosure of their gateway message transmission noninfringement theory, Cooper needed to bring that to the Court's attention.[16]

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions for summary judgment of non-infringement of Claims 12–18 of the '428 patent with respect to both literal infringement and under the doctrine of equivalents. An appropriate Order follows.

### *ORDER*

At Wilmington, this **25th** day of May, 2012:

For the reasons set forth in the Memorandum Opinion issued this date,

**IT IS HEREBY ORDERED** that:

1. Twitter, Inc.'s Motion for Summary Judgment of Non–Infringement (D.I. 399) is **GRANTED.**

2. Everbridge Inc.'s Motion for Summary Judgment of Non–Infringement (D.I. 412) is **GRANTED.**

---

**15.** Cooper's only attempt to supplement its expert reports was made in response to the *Court's* claim construction order, which issued during the parties' summary judgment briefing. (D.I. 498) Cooper never sought to supplement its expert reports to address Defendants' noninfringement theory.

**16.** Cooper's continued insistence in its supplemental letter submissions that Dr. Vigna's opening expert report adequately provides particularized testimony and linking argument further suggests that Cooper would not have included any additional or different testimony in Dr. Vigna's report even if Defendants had disclosed their non-infringement position beforehand.

3. Federal Signal Corp.'s Motion for Summary Judgment of Non–Infringement (D.I. 386) is **GRANTED.**

4. The parties' following motions are **DENIED AS MOOT:**

 a. Defendants' Motion for Summary Judgment for Lack of Written Description (D.I. 382);

 b. Defendants' Motion for Summary Judgment for Indefiniteness (D.I. 384);

 c. Federal Signal Corp.'s Motion to Exclude Dr. Giovanni Vigna from Testifying About Infringement at Trial (D.I. 389);

 d. Federal Signal Corp.'s Motion to Exclude Mr. Christopher A. Martinez from Testifying at Trial (D.I. 391);

 e. Cooper Notification Inc.'s Motion for Summary Judgment of No Invalidity Under 35 U.S.C. § 102(b) (D.I. 393);

 f. Cooper Notification Inc.'s Motion to Exclude Testimony of Twitter's Damages Expert Daniel Burns (D.I. 396);

 g. Twitter Inc.'s Motion for Summary Judgment of No Damages (D.I. 401);

 h. Twitter Inc.'s Motion to Exclude the Testimony of Christopher Martinez (D.I. 402);

 i. Twitter Inc.'s Motion for Summary Judgment of Invalidity Due to On–Sale Bar (D.I. 405);

 j. Twitter Inc.'s Motion to Exclude the Testimony of Dr. Giovanni Vigna (D.I. 407); and

 k. Twitter Inc.'s Motion for Clarification Regarding the Court's Claim Construction Opinion (D.I. 500).

5. The discovery teleconference scheduled for June 11, 2012; the pretrial conference scheduled for June 13, 2012; and the trial scheduled to commence on July 9, 2012 are **CANCELLED.**

6. Because the Memorandum Opinion issued with this Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single jointly proposed redacted version of the Memorandum Opinion. The parties are ordered to submit this jointly proposed redacted version no later than May 31, 2012 for review by the Court. The Court will subsequently file a publicly-available version of its Memorandum Opinion.

### *MEMORANDUM ORDER*

1. Plaintiff Cooper Notification, Inc. ("Cooper") requests reconsideration or reargument, leave to file supplemental infringement reports, and clarification of the Court's claim construction in connection with the May 25, 2012 opinion (D.I. 568) ("Opinion") and Order (D.I. 569) granting Defendants' motions for summary judgment of non-infringement.

2. Pursuant to Local Rule 7.1.5, a motion for reconsideration should be granted only "sparingly." The decision to grant such a motion lies squarely within the discretion of the district court. *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.,* 42 F.Supp.2d 385, 419 (D.Del.1999); *Brambles USA, Inc. v. Blocker,* 735 F.Supp. 1239, 1241 (D.Del. 1990). These types of motions are granted only if the court has patently misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error not of reasoning but of apprehension. *See Schering Corp. v. Amgen, Inc.,* 25 F.Supp.2d 293, 295 (D.Del. 1998); *Brambles,* 735 F.Supp. at 1241. "A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made." *Smith v. Meyers,* 2009 WL 5195928, at *1 (D.Del. Dec. 30, 2009); *see also Glendon Energy Co. v. Borough of Glendon,* 836 F.Supp. 1109, 1122 (E.D.Pa.1993). It is not an opportunity to "accomplish repetition of argu-

ments that were or should have been presented to the court previously." *Karr v. Castle*, 768 F.Supp. 1087, 1093 (D.Del. 1991). A motion for reconsideration may be granted only if the movant can show at least one of the following: (i) there has been an intervening change in controlling law; (ii) the availability of new evidence not available when the court made its decision; or (iii) there is a need to correct a clear error of law or fact to prevent manifest injustice. *See Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999). However, in no instance should reconsideration be granted if it would not result in amendment of an order. *See Schering Corp.*, 25 F.Supp.2d at 295.

3. Having reviewed the parties' submissions, the Court concludes that Cooper has not met the standards for reconsideration, or any of the other requested relief.

4. Cooper first contends that it should be; permitted to provide supplemental infringement reports (including on infringement under the doctrine of equivalents) to address the issues raised in the Court's May 25, 2012 Opinion. According to Cooper, its infringement expert, Dr. Vigna, "never had an opportunity to provide an analysis specially tailored to the aspect of the gateway message transmission limitation that was the basis for the Court's grant of summary judgment, because this position and accompanying argument was not raised until long after he submitted his report;" thus, Cooper continues, "it would be manifestly unjust not to allow Cooper to supplement its infringement report." (D.I. 572 at 4, 5) The Court has already considered whether Cooper should be provided an opportunity to provide a supplemental infringement report. (*See* Opinion at 21–22) For the reasons explained in the Opinion, the Court is unpersuaded by Cooper's arguments. Cooper had multiple opportunities to supplement Dr. Vigna's expert report, and/or seek to strike Defendants' non-infringement theory as untimely, but chose not to avail itself of those opportunities.

5. Cooper next contends that the Court's grant of summary judgment is grounded in a clear error of fact because it ignores substantial evidence of infringement by Defendants' accused systems even under the Court's construction of the gateway message transmission limitation. (D.I. 572 at 6–7) According to Cooper, Dr. Vigna's expert reports, deposition testimony, and declarations provide substantial evidence that Defendants' accused systems meet the gateway message transmission limitation of the asserted claims. The Court previously considered the evidence now re-raised by Cooper, and found no genuine dispute that the accused systems do not transmit the gateway messages identified by Dr. Vigna to the user terminals as required by Claim 12; instead, it is only the accused second messages identified by Dr. Vigna that are allegedly delivered to the end users in Defendants' accused systems. The Court again rejects Cooper's contentions.

6. Cooper next contends that the Court's claim construction is based on clear legal errors. The Court has considered Cooper's arguments and does not find them persuasive. Moreover, the claim construction arguments now raised by Cooper could have and should have been raised during the summary judgment process. *See* Opinion at 6–7 ("[T]he Court agrees with Defendants that the parties' competing positions present a claim construction dispute as to the proper meaning of the gateway message transmission requirements of Claim 12, rather than an infringement dispute over the nature or operation of the Defendants' accused systems."); *see also generally* Transcript of Summary Judgment Hrg. (D.I. 555) at 6 (Twitter's counsel: "The dispute . . . on

infringement is really one of claim construction."), *id.* at 28 (Twitter's counsel describing issue as "pure claim construction"), *id.* at 63 (counsel for Cooper stating, "So the mere fact that they're trying to revisit claim construction is apparent here.").

7. Finally, Cooper requests that the Court clarify various aspects of its construction of the gateway message transmission limitation. The Court agrees with Defendants that clarification is unnecessary and unwarranted. At least some of the issues raised by Cooper are beyond the scope of Defendants' summary judgment motions and the Court's Opinion.

8. For the foregoing reasons, Cooper's request for reconsideration or reargument, leave to file supplemental infringement reports, and clarification of the Court's claim construction (D.I. 572) is **DENIED.**

9. Judgment is entered **AGAINST** Plaintiff, Cooper Notification, Inc., and **FOR** Defendants, Twitter, Inc., Everbridge, Inc., and Federal Signal Corp. The Clerk of the Court is directed to **CLOSE** the case.