Opinion concurring in part and dissenting in part filed by Circuit Judge TARANTO.
LOURIE, Circuit Judge.
Cooper Notification, Inc. (“Cooper”) appeals from the summary judgment of the United States District Court for the District of Delaware holding that Twitter, Inc., Federal Signal, Inc., and Everbridge Corp. (collectively “the Defendants”) do not infringe claims 12-18 of U.S. Patent 7,409,428 (the “ '428 patent”). Cooper Notification, Inc. v. Twitter, Inc., 867 F.Supp.2d 485 (D.Del.2012). Because the district court did not err in granting summary judgment of noninfringement, we affirm.
BACKGROUND
Cooper owns the '428 patent, which discloses a system of mass messaging in which a message is sent to one or more communication gateways that forward that message to individual users. '428 patent col. 4 11. 18-36. The disclosed system allows many recipients to receive that message without overloading any one communication point. Id. An initial message is sent to a messaging subsystem that con *961 verts the first message into a “gateway message” containing information such as identifying users who will receive the message and providing address information for those users. Id. col. 10 11. 10-42. The messaging subsystem then forwards one or more gateway messages to the communication gateways, which then forward the message to the individual users. Id. col. 4 11. 18-36. The communication gateways can perform operations on the gateway messages, such as reformatting them. Id. col. 10 11.10-42.
Claim 1, which is not at issue on appeal, but is relevant to our decision, is directed to a communication method that takes a first message, converts it into a gateway message, and sends that message to the communication gateways. Upon receipt of the gateway message, the communication gateways distribute a second message to each user registered to that gateway.
Claim 1 recites:
1. A communication method comprising:
registering a plurality of users for receiving messages; determining, in response to receiving a first message from at least one alert originator, one or more user terminals to receive a second message corresponding to the received first message, each of the one or more user terminals being associated with at least one registered user;
converting the first message to one or more gateway messages; and
transferring each of the one or more gateway messages to one or more corresponding communication gateways for distribution of the second message by the one or more communication gateways to each of the registered users associated with at least one message group, wherein the transfer is performed using a non-voice channel;
wherein converting further comprises reformatting, for each of the one or more gateway messages, the first message received from the alert originator to a format in which the communication gateway associated with the gateway message will accept and perform operations in response to the incoming gateway message and forming an address for each of the one or more gateway messages to include the domain name information associated with the communication gateway or the user identification information associated with the registered user receiving the second message.
Id. col. 2911. 20-46 (emphasis added).
Claim 12, which is directly at issue here, is directed to a communication system that converts a first message into a gateway message. The communication gateways then transmit that gateway message to the registered users.
Claim 12 reads as follows:
12. A communication system comprising:
a first messaging subsystem which may be coupled to an alert originator and to one or more communication gateways, wherein each of the gateways is also coupled to at least one user terminal, and wherein the first messaging subsystem associates a unique set of message parameters with each of the communication gateways;
wherein the first messaging subsystem is configured to transmit at least one gateway message to a plurality of the user terminals via the one or more communication gateways, in accordance with each set of the unique message parameters for each communication gateway, upon receiving a first message from the alert originator;
*962 wherein the first messaging subsystem is configured to reformat, for each of the one or more gateway messages, the first message received from the alert originator to a format in which the communication gateway associated with the gateway message will accept and perform operations in response to the incoming gateway message; and
wherein the first messaging subsystem is configured to form an address for each of the one or more gateway messages to include the domain name information associated with the communication gateway or the user identification information associated with the registered user receiving the second message.
Id. col. 30 11. 24-49 (emphasis added). Claims 13-18, also on appeal, are dependent upon claim 12. The determination of noninfringement therefore applies equally to the dependent claims and they are accordingly not treated separately.
On November 13, 2009, Cooper filed suit against the Defendants, accusing them of infringing claims 1-18 of the '428 patent. The Defendants all provide message notification systems. Although the particular implementations of the Defendants’ systems differ, each system can deliver messages to end users through text messaging (“SMS”) or email. The systems generally accept an original message, format that message into one or more gateway messages, and send the gateway message to a communication gateway that performs operations on that message, such as formatting it for specific cellular phones. Cooper, 867 F.Supp.2d at 496. The communication gateways then compose new, individual messages to be sent to the various subscribers or recipients. Id.
On August 26, 2010, the Defendants filed an inter partes reexamination request in the U.S. Patent and Trademark Office. The district court proceeding was not stayed pending the reexamination, and the court conducted a Markman hearing on September 9, 2011. After the Markman hearing, but before the court issued a claim construction order, the PTO examiner issued an action closing prosecution. The examiner rejected claims 1-3, 5, and 8-11, finding that those claims were anticipated or would have been obvious in view of the prior art, specifically U.S. Patent 6,816,878 (“Zimmers”). On the other hand, the examiner allowed claim 12 and its dependent claims. The examiner found that claim 1 and claim 12 differed in that in claim 1 the communication gateway composed a new, second message to send to the users, whereas in claim 12 the gateway message itself was sent to the users. The examiner stated that:
[Claim 12] requires that the first messaging subsystem “... is configured to transmit at least one gateway message to a plurality of user terminals via the one or more communication gateways ... which is not taught by Zimmers. Zimmers discloses that a gateway message ... is transmitted to a gateway where an alert message is then created and transmitted to the user. The user does not receive a gateway message as claimed....
[T] he system of claim 1 creates a second message to send to the end users (as in Zimmers), rather than transmitting the gateway message to the user,
Action Closing Prosecution, No. 95/001,-425, at 21 (Oct. 6, 2011). The examiner thus rejected claim 1 and certain of its dependent claims, but allowed claim 12 and its dependent claims.[1]
*963 On November 30, 2011, Cooper notified the district court that it was no longer asserting claims 1-11 of the '428 patent against the Defendants. After the examiner’s rejection, Cooper and the Defendants discussed dropping claims 1-11 from the litigation. J.A. 3924-25. Cooper proposed a joint stipulation withdrawing the claims with prejudice. J.A. 3927-29, 3932-33. Later, despite that proposal, it would not file the proposed stipulation to dismiss them with prejudice. J.A. 3946. The Defendants in turn formally moved for dismissal with prejudice. The court granted that motion, reasoning that the Defendants were entitled to certainty that those claims would not arise at a later date. J.A. 10574.
A few days before dismissing claims 1-11, the district court issued its Markman opinion and order construing the '428 patent’s disputed terms. Significantly the court did not construe the transmission limitation of claim 12 (“transmit at least one gateway message to a plurality of user terminals via the one or more communication gateways”). However, after claims 1-11 were dropped, infringement of the accused products hinged on the construction of that limitation. The Defendants moved for summary judgment of noninfringement based on their proposed construction of the transmission limitation.
On May 25, 2012, the district court construed the transmission limitation, “transmit at least one gateway message to a plurality of the user terminals via the one or more communication gateways,” to “require transmission such that the gateway message itself is delivered to the user terminals.” Cooper, 867 F.Supp.2d at 492. The district court relied on differences in the claim language of claims 1 and 12, as well as the prosecution history. Specifically, the district court noted differences in the claim language regarding the handling of the gateway message. The court compared claim 12’s requirement of “transmit[ting] at least one gateway message to a plurality of user terminals ” with claim l’s requirement of “transferring each of the one or more gateway messages to one or more corresponding communication gateways ” and found that the difference in the claim language required the communication gateways of claim 12 to send the received gateway messages to the end users. Id. (emphasis original). The district court also noted that in the reexamination, the examiner rejected claim 1 as anticipated by Zimmers but did not reject claim 12 because claim 12 requires the “actual delivery of the gateway message itself to the user terminals.” Id. (emphasis original). That led the court to conclude that claim 12 required that the user receive the actual gateway message.
Because the district court found that claim 12 required that the gateway message itself be delivered to the end user, the court granted summary judgment of non-infringement of claims 12-18 based on that construction. Id. at 495-96. The court found that there was no dispute that the accused systems did not send a gateway message to the end user. The court found that the Defendants’ “accused gateway messages identified by Cooper ... each contain substantive message content bundled together with the user information for multiple end users.” Id. at 495 (emphasis original). The Defendants’ accused second messages, in contrast, “contain only the substantive message content and the user information for the single end user actually receiving that particular second mes *964 sage.” Id. (emphasis original). In other words, the messages that the end users actually received only contained the information for that end user and were not gateway messages. The court thus found that there was no genuine dispute that in the Defendants’ accused systems, only the second message was actually delivered to the end users, not the accused gateway messages. Id. The court therefore granted summary judgment of noninfringement. Id.
After the district court granted summary judgment, Cooper moved to allow the entry of supplemental infringement expert reports to address the claim construction in the summary judgment opinion. Having already found that Cooper had multiple opportunities to supplement its expert report before the summary judgment decision, but chose not to, the court denied the motion. Cooper Notification, Inc. v. Twitter, Inc., 867 F.Supp.2d 485, 499 (D.Del.2012), ECF No. 576.
Cooper appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).
Discussion
I. Standard of Review
We review de novo the district court’s grant of summary judgment, drawing all reasonable inferences in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Hologic, Inc. v. SenoRx, Inc., 639 F.3d 1329, 1334 (Fed.Cir.2011). Summary judgment is appropriate when there is “no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a). Claim construction is a matter of law that we review de novo on appeal, Markman v. Westview Instruments, Inc., 517 U.S. 370, 391, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), although we recognize and benefit from the expertise and vantage point of the trial court judge, see Marine Polymer Techs., Inc. v. HemCon, Inc., 672 F.3d 1350, 1357 (Fed.Cir.2012).
Unless a procedural ruling raises issues unique to patent law, we apply the law of the appropriate regional circuit. Chimie v. PPG Indus., 402 F.3d 1371, 1376 (Fed.Cir.2005). According to the law of the Third Circuit, which controls here, exclusion of evidence by the district court is reviewed by an appellate court for abuse of discretion. Glass v. Philadelphia Elec. Co., 34 F.3d 188, 191 (3d Cir.1994). The Third Circuit reviews a district court’s dismissal of litigation claims with prejudice for an abuse of discretion. Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 260 n. 1 (3d Cir.2011).
II. Claim Construction of the Transmission Limitation
Cooper first argues that the district court erred in its construction of the transmission limitation. Cooper states that the district court misconstrued the claims to require separate receipt of both the gateway message and a separate second message, contrary to the claim language and the teachings of the '428 patent.
The Defendants respond that the district court correctly interpreted the phrase “transmit at least one gateway message to a plurality of user terminals via one or more communication gateways” to require “transmission such that the gateway message itself is delivered to the user terminals.” They argue that the claim language and reexamination history of claim 12 require that the gateway messages be sent to the end users. Defendants further contend that Cooper is attempting to rewrite claim 12 to be claim 1, which was already found to be unpatentable by the PTO examiner.
*965 We agree with the Defendants. The district court’s interpretation of the transmission limitation is supported by the intrinsic evidence, and we therefore uphold that construction. Our claim construction analysis begins with the language of the claim itself, as it would have been understood by a person of ordinary skill in the art at the time of the invention. Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed.Cir.2005) (en banc) (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed.Cir.1996) (stating that “we look to the words of the claims themselves ... to define the scope of the patented invention”)).
Claim 1, which, as has been indicated, has been found by a PTO examiner to be unpatentable on reexamination, requires the gateway message to be transferred to the communication gateways for “distribution of the second message by [those] communication gateways to each of the registered users.” '428 Patent col. 29 11. 29-33. Claim 12, on the other hand, requires the messaging system to “transmit at least one gateway message to a plurality of user terminals via the one or more communication gateways, ... upon receiving a first message.” Id. col. 30 11. 32-36. Thus, claim 12’s language requires that the communication system transmit “at least one gateway message to a plurality of user terminals.” Id. (emphasis added). The claim language of claim 12 is clear that the gateway message itself is delivered to the users, as opposed to claim l’s language which states that a “second message” is distributed to each of the users.
Further, the examiner’s reasons for differentiating claim 1 and claim 12, while not dispositive, can be helpful in determining the meaning of the claim terms. Reexaminations can “provid[e] the district court with the expert view of the PTO (when a claim survives the reexamination proceeding).” Gould v. Control Laser Corp., 705 F.2d 1340 (Fed.Cir.1983). The examiner differentiated claim 1 from claim 12 because, unlike claim 1 where a new second message was created from the gateway message and sent to the end users, claim 12 “transmitt[ed] the gateway message to the user,” and that limitation was not taught in Zimmers. J.A. 12280. The examiner’s statements during the reexamination support the district court’s construction of the transmission limitation.
Finally, adopting Cooper’s proposed claim construction would essentially make the transmission limitation of claim 12 mirror claim l’s handling of the gateway message and, as will be confirmed infra, claim 1 has already been dismissed with prejudice. By adopting Cooper’s proposed construction, we would be construing claim 12 in a way that circumvents the district court’s dismissal with prejudice. Because its construction was supported by the claim language and the prosecution history, the district court did not err in its construction of the transmission limitation and hence did not err in its summary judgment of noninfringement of claims 12-18.
III. Denial of Supplemental Infringement Reports
Cooper next argues that it was unfairly prejudiced by not having an opportunity to submit supplemental expert reports to address the district court’s construction of the transmission limitation construed in its summary judgment opinion.
The Defendants respond that Cooper did not ask to supplement its infringement reports until after it lost on summary judgment. The Defendants further argue that they surfaced the transmission limitation issue in their expert reports in December 2011 and that Cooper was on notice of a possible need to supplement the *966 record due to the examiner’s clarification of the limitation.
We agree with the Defendants. The court correctly concluded that Cooper had ample time to indicate a desire to supplement the evidence, and the district court was well within its discretion to deny entry of supplemental infringement reports. The Third Circuit generally considers four factors in evaluating whether a district court properly exercised its discretion. Chimie, 402 F.3d at 1381. Those factors are: (1) the prejudice or surprise in fact of the party against whom the excluded evidence would have been submitted; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the discovery deadline would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness in failing to comply with the district court’s order. See In re TMI Litig., 193 F.3d 613, 721 (3d Cir.1999) (citing Meyers v. Pennypack Woods Home Ownership Assoc., 559 F.2d 894, 904-05 (3d Cir.1977)). Those factors weigh in favor of the district court’s decision here.
Regarding the first and fourth factor, Cooper did not provide its detailed infringement contentions until serving its initial expert report on November 11, 2011. Cooper, 867 F.Supp.2d at 498-99. After the Defendants raised their transmission limitation theory in their December 8, 2011 expert reports, Cooper did not attempt to supplement its reports regarding that limitation before the district court found for the Defendants. Id. Cooper was on notice from well before the district court issued its summary judgment opinion construing the transmission limitation and yet did not seek to remedy any shortcoming it believed existed. It cannot now claim surprise at an issue that it should have addressed earlier. The first factor thus supports the district court’s decision and the fourth is no worse than neutral in that respect.
Regarding the second and third factors, supplemental infringement reports would likely generate new discovery, new expert reports responding to the supplemental reports and disclosures, and new summary judgment, Daubert, and in limine motions. The only way to cure the alleged prejudice to Cooper would have been to reinstate the trial and delay the final resolution of this case by months or years. The second and third factors, thus, also support the district court’s decision. Because those factors support the district court’s denial of entry of supplemental infringement reports, the court did not abuse its discretion in denying Cooper the opportunity to file them.
IV. Dismissal of Claims 1-11 With Prejudice
Cooper also argues that the district court lacked jurisdiction to dismiss claims 1-11 because Cooper had withdrawn them from the case, and thus that it may reassert those claims at a later date because of a change in the law of inducement of infringement. Defendants respond that the court still had jurisdiction over claims 1-11 and dismissed them to ensure that they would not be reasserted against the Defendants in some later litigation.
We agree with the Defendants that the district court retained jurisdiction over claims 1-11 and properly dismissed them. A district court retains jurisdiction over a patent suit unless there is a clear, unequivocal statement that the potential infringer will not be sued. See SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372 (Fed.Cir.2007) (finding jurisdiction despite vice president’s statement that they had “absolutely no plan to sue [the alleged infringer]” because the patentee had a pattern of enforcing their patent rights and in previous negotiations, had only stated *967 there was no current intent to sue). Further, a district court retains jurisdiction over claims in a patent suit for purposes of Federal Rule of Civil Procedure Rule 41 even if the patentee offers a covenant not to sue. See Highway Equipment Co. v. FECO, Ltd., 469 F.3d 1027, 1033 n. 1 (Fed.Cir.2006) (finding that a covenant not to sue may have eliminated district court jurisdiction for patent-related counterclaims but “does not deprive the district court of jurisdiction to determine the disposition of the patent infringement claims raised in the Complaint under Rule 41”). In this case, Cooper initially provided such a statement, by agreeing with the Defendants to dismiss claims 1-11 with prejudice and sending to the Defendants a proposed stipulation to dismiss the claims with prejudice. J.A. 10572. The Defendants relied on that agreement by not addressing claims 1-11 in their invalidity expert reports.
But Cooper later withdrew its stipulation to dismiss the claims with prejudice. At the district court’s later hearing, Cooper conceded that this trial was its one opportunity to bring claims 1-11 and that “[i]t is gone now,” that the Defendants would “never have to face [claims 1-11] again,” and that the Defendants “don’t have to ever worry about the '428 patent [claims 1-11], ... ever again.” J.A. 10574. Despite those promises in open court, however, Cooper resisted dismissing the claims with prejudice. The district court, therefore, believing that the Defendants were “entitled to as most certainty as [the court] can give them that they will never be confronted again with claims 1 through 11 of the '428 patent,” dismissed the claims with prejudice. J.A. 10577. We see no reason to disturb that ruling.
Given Cooper’s proposed stipulation for dismissal with prejudice, the Defendants’ reliance on that stipulation, and Cooper’s representations in open court, the district court was well within its discretion to dismiss the claims with prejudice. The court was entitled to insulate the Defendants from the exact situation we have before us, i.e., the desire of Cooper to reassert the claims at a later date. Cooper argues that it would now like to assert the claims due to a change in the law, despite its earlier statements that the Defendants would never again have to worry about claims 1-11. Nonetheless, the district court was well within its discretion to take Cooper at its word and to dismiss the claims with prejudice.
Conclusion
For the foregoing reasons, the decisions of the district court granting the Defendants’ motion for summary judgment of noninfringement of claims 12-18 of the '428 patent, denying Cooper’s motion for supplemental infringement reports, and dismissing claims 1-11 with prejudice are
AFFIRMED.

. Cooper did not respond to the action closing prosecution and on March 20, 2012, the *963 PTO sent a right of appeal notice. On April 20, 2012, the Defendants appealed certain non-adopted rejections of claims it had proposed in the reexamination proceeding and that appeal is currently ongoing.